Matter of Kelly N. v Chenango County Dept. of Social Servs. (2025 NY Slip Op 00010)

Matter of Kelly N. v Chenango County Dept. of Social Servs.

2025 NY Slip Op 00010

Decided on January 2, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 2, 2025

CV-23-2097
[*1]In the Matter of Kelly N., Appellant,
v
Chenango County Department of Social Services, on Behalf of Kimberly M., Respondent.

Calendar Date:November 12, 2024

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Christopher Hammond, Cooperstown, for appellant.
Chenango County Department of Social Services, Norwich (Jennifer E. Mason of counsel), for respondent.
Lisa A. Natoli, Norwich, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Chenango County (Frank B. Revoir Jr., J.), entered October 13, 2023, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 4, to modify a prior order of support.
Petitioner (hereinafter the mother) is the mother of the subject child (born in 2006), who is in the physical custody of the maternal aunt pursuant to a Family Court order issued in May 2021 on the mother's consent. By order entered on default on April 22, 2022, the mother was directed to pay $50 per week in child support. In February 2023, respondent filed a petition alleging that the mother was in violation of the support order and owed $3,622.22 in arrears. The mother subsequently commenced the instant modification proceeding seeking to suspend her support obligation. A bifurcated hearing on the petitions ensued, with testimony on the violation petition completed on May 15, 2023 and the Support Magistrate (Natoli, S.M.) finding a willful violation. Although testimony on the mother's modification petition was also taken on that date, the Support Magistrate transferred the proceeding to Family Court after it became clear that the mother was raising the affirmative defense of parental or custodial alienation to support her petition (see Family Ct Act § 439 [a]). After additional testimony was taken on the mother's modification petition in October 2023, Family Court issued two orders. The first order, entered October 5, 2023, confirmed the Support Magistrate's violation finding, sentenced the mother to 60 days in jail, and set a purge amount of $1,300. The second order, entered October 13, 2023, dismissed the mother's alienation affirmative defense with prejudice, dismissed her modification petition, and continued the current order of support. The mother appeals only from the October 13, 2023 order.
The mother argues that Family Court used an incorrect legal standard to resolve her custodial alienation affirmative defense, necessitating a new hearing. A parent's duty to support his or her child until the age of 21 may be suspended "where the noncustodial parent establishes that his or her right of reasonable access to the child has been unjustifiably frustrated by the custodi[an]" (Matter of Curley v Klausen, 110 AD3d 1156, 1157 [3d Dept 2013] [internal quotation marks and citation omitted]; see Family Ct Act § 413 [1] [a]; Matter of O'Brien v Rutland, 180 AD3d 1183, 1183-1184 [3d Dept 2020]). To suspend payments based upon parental alienation, the moving party must show that the custodian "intentionally orchestrated and encouraged the estrangement of [the noncustodian] from the child[ ] or . . . actively interfered with or deliberately frustrated [the noncustodial parent's] visitation rights" (Matter of Curley v Klausen, 110 AD3d at 1157 [internal quotation marks and citations omitted]; accord Matter of O'Brien v Rutland, 180 AD3d at 1184).
In a bench decision following the close of the hearing testimony, [*2]Family Court articulated the alienation standard as follows: "the parent alleging that [he or she] shouldn't have to pay support [due to parental alienation] has to show that, like Superman, they tried and attempted to leap tall buildings in a single bound and swim rivers against the tide and do all the things that they could in order to attempt to keep the relationship going. In other words, part of the burden in these proceedings is not only to establish that there may have been some attempted interference but that [the noncustodial parent] did everything possible to prevent that" (emphasis added). Although Family Court is correct that a parent who does not make efforts to maintain a relationship with his or her child will have a difficult time establishing the affirmative defense of custodial alienation (see e.g. Matter of Curley v Klausen, 110 AD3d at 1157), the exaggerated language articulated by Family Court during its bench decision gives us pause as to whether it held the mother to an unduly harsh standard.[FN1] Out of an abundance of caution, and since the record is sufficiently developed, we find it prudent to exercise our independent fact-finding powers to make a de novo determination (see Matter of Steven OO. v Amber PP., 227 AD3d 1154, 1158 [3d Dept 2024]; Matter of Megan NN. v Michael NN., 210 AD3d 1357, 1361 [3d Dept 2022]).
Upon our record review, we agree with Family Court that the mother did not establish her custodial alienation affirmative defense. The child is in the maternal aunt's care pursuant to the May 2021 custody order, which grants the mother joint legal custody and "reasonable visitation [with the child] . . . subject to the child's wishes." The mother testified that her relationship with the maternal aunt was strained long before the May 2021 order was issued, but consented to the placement. She failed to articulate any specific, unjustifiable actions taken by the aunt to frustrate her visitation rights. The mother also acknowledged that she did not make any visitation requests for nearly two years between November 2021 and August 2023, failed to send the child letters during this time frame, and did not reach out to the child on the child's birthdays (see Matter of Sanders v Jaco, 148 AD3d 812, 813 [2d Dept 2017]). This testimony does not establish a claim of custodial alienation sufficient to warrant a suspension of her support payments (see Matter of Curley v Klausen, 110 AD3d at 1157; Roelofsen v Tiberie, 64 AD3d 603, 604 [2d Dept 2009]).[FN2] We find the mother's remaining ineffective assistance of counsel claim unavailing, for her attorney's failure to call the maternal aunt to testify or request a Lincoln hearing may well have been a strategic decision (see Matter of Bennett v Abbey, 141 AD3d 882, 883-884 [3d Dept 2016]).[FN3] We take note that, in her responding brief, the attorney for the child urges this Court to affirm Family Court's decision.
Garry, P.J., Reynolds Fitzgerald, Fisher and Powers, JJ., concur.
ORDERED [*3]that the order is affirmed, without costs.

Footnotes

Footnote 1: We conclude as much despite the fact that the order on appeal did not use this exaggerated language.
Footnote 2: In its bench decision denying the mother's modification petition, Family Court also rejected the mother's testimony, given during the appearance before the Support Magistrate on May 15, 2023, that changed medical and employment circumstances rendered her unable to comply with her support obligation. The mother makes no argument challenging this determination, instead limiting her argument to the denial of her custodial alienation affirmative defense.

Footnote 3: Although there is no statutorily-prescribed right to assigned counsel in a child support modification proceeding (see Matter of Berg v Berg, 166 AD3d 766, 767 [2d Dept 2018]), such a right exists in a child support violation proceeding (see Family Ct Act § 262 [a] [vi]). Since the mother was represented by the same counsel at both proceedings, which were heard together in a bifurcated manner, we will entertain the mother's ineffective assistance of counsel argument and apply the "meaningful representation" standard (see Matter of Nassau County Dept. of Social Servs. v King, 149 AD3d 942, 944 [2d Dept 2017]; compare Matter of Berg v Berg, 166 AD3d at 767).